UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 26-23257-CIV-DAMIAN**

JOSE ANTONIO
CASTELLANO SERRANO,

      Petitioner,

v.

DEPARTAMENT OF HOMELAND
SECURITY ET.AL.,
GARRET RIPPA,

      Respondents.

_____/

### ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS*

**THIS CAUSE** is before the Court on Petitioner, Jose Antonio Castellano Serrano's ("Petitioner"), Petition For Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"), filed May 8, 2026, and upon Petitioner's Motion to Proceed in forma pauperis, filed on May 8, 2026 [ECF No. 3].

THE COURT has reviewed the Petition, Respondent's Response [ECF No. 6], the pertinent portions of the record, and relevant legal authorities and is otherwise fully advised.

### I.     BACKGROUND

The background relevant to Petitioner's immigration status and proceedings before the Immigration Court is set forth in the parties' submissions. *See generally* Pet., Resp.

Petitioner, Jose Antonio Castellano Serrano, is a native and citizen of Cuba who was paroled into the United States on or about October 13, 1989, until October 13, 1990. Resp. at Exh. A, Form I-213, Record of Deportable/Inadmissible Alien (dated Nov. 30, 2025); Exh. B, Form I-94. Petitioner thereafter sustained multiple criminal convictions.

On November 5, 1997, Petitioner was convicted of aggravated assault and assault in the Superior Court of the District of Columbia. Resp. at Exh. C, Judgment and Commitment/Probation Order. He was sentenced to serve three to ten years' imprisonment for aggravated assault and a consecutive 180-day term for assault. *Id*. Based on those convictions, immigration authorities initiated expedited administrative removal proceedings pursuant to section 238(b) of the Immigration and Nationality Act ("INA"). On March 3, 1999, immigration officials issued and served Petitioner with a Notice of Intent to Issue a Final Administrative Removal Order, charging him with removability under section 237(a)(2)(A)(iii) of the INA based on his conviction for an aggravated felony, namely a crime of violence as defined in section 101(a)(43)(F) of the INA. Resp. at Exh. D, Notice of Intent to Issue a Final Administrative Removal Order. Petitioner admitted the allegations, acknowledged that he was not eligible for relief from removal, and waived his right to contest the charges. *Id*.

On March 22, 1999, immigration authorities issued a Final Administrative Removal Order directing Petitioner's removal. Resp. at Exh. E, Final Administrative Removal Order.

Petitioner thereafter incurred additional criminal convictions. On March 4, 2009, Petitioner was convicted of cocaine possession in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and was sentenced to twenty-one days' imprisonment. Resp. at Exh. F, Cocaine Possession Conviction. On July 27, 2009, Petitioner was convicted of burglary of an unoccupied conveyance and grand theft in the same court and sentenced to 180 days' imprisonment. Resp. at Exh. G, Burglary and Theft Conviction. On May 28, 2010, Petitioner was convicted of cocaine possession and possession of drug paraphernalia with intent to use and sentenced to twenty-nine days' imprisonment. Resp. at Exh. H, Cocaine and Drug Paraphernalia Conviction.

On or about May 2, 2011, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody. Resp. at Exh. I, Detention History. On August 1, 2011, ICE released Petitioner on an Order of Supervision ("OSUP"). *Id*.

On or about November 14, 2025, ICE Enforcement and Removal Operations encountered Petitioner at the Turner Guilford Knight Correctional Center in Miami, Florida, following his arrest for controlled substance possession and possession of drug paraphernalia with intent to use. Resp. at Exh. A at 2. On January 23, 2026, Petitioner was convicted of controlled substance possession in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and sentenced to sixty days' imprisonment. Resp. at Exh. J, Possession Controlled Substance Conviction. On or about January 24, 2026, Petitioner was transferred into ICE custody. Resp. at Exh. I.

On January 25, 2026, ICE revoked Petitioner's OSUP in order to effectuate execution of Petitioner's final order of removal. Resp. at Exh. K, Notice of Revocation of Release. On January 27, 2026, ICE served Petitioner with a Notice of Removal advising that ICE intended to remove him to Mexico. Resp. at Exh. L, Notice of Removal. Petitioner was thereafter detained at the Krome North Service Processing Center in Miami, Florida, where he remains pending execution of his final order of removal. Resp. at Exh. I; Exh. M, Declaration.

## II.   DISCUSSION

### A.  Petitioner's Detention is Governed by the Post-Removal Statutory Framework

As an initial matter, the parties do not dispute that immigration authorities issued a Final Administrative Removal Order against Petitioner on March 22, 1999, pursuant to section 238(b) of the Immigration and Nationality Act, based on Petitioner's conviction for an aggravated felony. Resp. at Exh. E, Final Administrative Removal Order (dated Mar. 22,

1999). The record further reflects that Petitioner admitted the allegations in the Notice of Intent to Issue a Final Administrative Removal Order, acknowledged that he was ineligible for relief from removal, and waived his right to rebut or contest the charges against him. Resp. at Exh. D, Notice of Intent to Issue a Final Administrative Removal Order. Nor is there any indication in the record that Petitioner thereafter sought administrative or judicial review of the Final Administrative Removal Order. See Pet. at 4–5; Resp. at 4–5. Under the Immigration and Nationality Act, an order of removal becomes administratively final upon either "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order." 8 U.S.C. § 1101(a)(47)(B). Where, as here, the time to appeal has expired and no appeal was taken, the removal order is administratively final by operation of statute.

The consequence of that finality is dispositive. Once a removal order becomes administratively final, the statutory "removal period" begins. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (providing that the removal period begins on "the date the order of removal becomes administratively final"). During and following that period, detention is governed by 8 U.S.C. § 1231, the post-removal detention framework, not by the pre-removal detention provisions of 8 U.S.C. § 1226. Accordingly, Petitioner's detention is governed by § 1231.

Because Petitioner's detention is governed by § 1231, his challenge to the statutory basis for that detention under any pre-removal framework is no longer ripe for review. The only cognizable inquiry at this stage is whether his post-removal detention has become constitutionally unreasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001), an issue addressed separately below.

### B. *Petitioner's Claim of Indefinite Detention Is Not Ripe*

The Supreme Court's decision in *Zadvydas v. Davis* provides the governing framework for evaluating Petitioner's challenge to his post-removal-period detention.

In *Zadvydas*, the Court considered whether 8 U.S.C. § 1231(a)(6) authorizes the indefinite detention of noncitizens subject to final orders of removal. The Court held that it does not. Rather, construing the statute in light of constitutional concerns, the Court recognized an implicit temporal limitation on detention.

Critically, the Court explained:

> "In order to limit the occasions when courts will need to make the difficult judgments called for by the recognition of this necessary Executive leeway, it is practically necessary to recognize a presumptively reasonable period of detention. It is unlikely that Congress believed that all reasonably foreseeable removals could be accomplished in 90 days, but there is reason to believe that it doubted the constitutionality of more than six months' detention. Thus, for the sake of uniform administration in the federal courts, six months is the appropriate period. After the 6–month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing."

*Id*. at 701.

Thus, *Zadvydas* establishes a two-step framework. First, detention for a period of up to six months following the commencement of the removal period is presumptively reasonable and authorized by statute. During that time, the Court affords the Executive Branch "necessary… leeway" to effectuate removal. *Id*. Second, only after that six-month period has elapsed does the burden shift to the noncitizen to demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. If such a showing is made, the Government must rebut it with sufficient evidence to justify continued detention. *Id*. The Eleventh Circuit has made this requirement explicit, holding that a

petitioner "cannot state a claim under *Zadvydas* until the six-month period has expired." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Importantly, *Zadvydas* does not require release after six months. Rather, it establishes a burden-shifting inquiry triggered only after that period has passed. Detention remains permissible unless and until the noncitizen satisfies the threshold showing and the Government fails to rebut it.

Here, the record reflects that Petitioner was transferred into ICE custody on or about January 24, 2026, following completion of his criminal sentence for controlled substance possession. Resp. at Exh. I, Detention History. On January 25, 2026, ICE revoked Petitioner's Order of Supervision in order to effectuate execution of his final order of removal. Resp. at Exh. K, Notice of Revocation of Release. Petitioner filed the instant Petition on May 4, 2026. Pet. at 8. Accordingly, his detention remains within the "presumptively reasonable period" recognized by the Supreme Court, and no further inquiry under *Zadvydas* is warranted at this time.

Courts routinely deny habeas petitions raising *Zadvydas* claims where the petitioner has not yet been detained for six months, because any alleged injury remains speculative rather than actual. At this stage, Petitioner cannot demonstrate that his detention has exceeded a reasonable duration, nor can he satisfy the threshold burden required to shift the inquiry to the Government. Because Petitioner cannot satisfy the threshold requirement for invoking *Zadvydas*, his habeas challenge to his continued detention is premature and must be denied.

### III.    CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **DENIED**. It is further

**ORDERED AND AJUDGED** that Petitioner's Motion to proceed in forma pauperis [**ECF No. 8**] is **DENIED**.

The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 25th day of May, 2026.

_____

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**